1  LEONARD L. GUMPORT (Bar No. 86935)
   *lgumport@gumportlaw.com*
2  ANDREW S. ROTTER (Bar No. 86725)
   *arotter@gumportlaw.com*
3  PETER J. MASTAN (Bar No. 190250)
   *pmastan@gumportlaw.com*
4  GUMPORT | MASTAN
   550 South Hope Street, Suite 825
5  Los Angeles, California 90071-2627
   Telephone: (213) 452-4900
6  Facsimile: (213) 623-3302

7  Proposed Attorneys for Ronald L. Durkin,
   Interim Chapter 11 Trustee
8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                 LOS ANGELES DIVISION

12  In re                         )  **Bk. No. 2:10-bk-19938-BR**
                                  )
13                                )  **CHAPTER 11**
                                  )
14  CAPITOL FILMS DEVELOPMENT,    )  **NOTICE OF MOTION AND MOTION**
    LLC,                          )  **PURSUANT TO FED.R.BANKR.P. 2004**
15                                )  **AND L.B.R. 2004-1 FOR AN ORDER**
                                  )  **REQUIRING THE PRODUCTION OF**
16        Alleged Debtor.         )  **DOCUMENTS BY AND THE**
                                  )  **EXAMINATION OF BANK OF**
17                                )  **AMERICA (NEWBURY PARK**
                                  )  **BRANCH 0671) BY ITS CUSTODIAN**
18                                )  **OF RECORDS; SUPPLEMENTAL**
                                  )  **DECLARATION OF LEONARD L.**
19                                )  **GUMPORT; DECLARATION OF**
                                  )  **ANDREW S. ROTTER; AND**
20                                )  **EXHIBITS**
                                  )
21                                )  [Declarations of Ronald L. Durkin, Daniel P. Dehner
                                  )  and Leonard L. Gumport, Request To Take Judicial
22                                )  Notice, Supplemental Declaration of Daniel P.
                                  )  Dehner, and Exhibits previously filed; and
23                                )  Supplemental Request To Take Judicial Notice,
                                  )  Exhibit, and Notice of Filing Motion concurrently
24                                )  filed under separate covers.]
                                  )
25                                )  **DATE:      July 20, 2010**
                                  )  **TIME:      10:00 a.m.**
26                                )  **PLACE:     Courtroom 1668**
                                  )            **255 E. Temple St.**
27                                )            **Los Angeles, CA 90012**
                                  )            **[Judge Russell]**
28  _____)

## NOTICE OF MOTION AND MOTION AND CONSUMER NOTICE

**TO BANK OF AMERICA (INCLUDING THE BRANCH MANAGER OF THE BANK OF AMERICA NEWBURY PARK BRANCH 0671), DAVID R. BERGSTEIN, SUSAN H. TREGUB, THE ALLEGED DEBTORS, THE OFFICE OF THE UNITED STATES TRUSTEE, PETITIONING CREDITORS, THOSE PERSONS AND ENTITIES THAT HAVE REQUESTED SPECIAL NOTICE, AND THEIR RESPECTIVE ATTORNEYS OF RECORD, IF ANY:**

**NOTICE IS HEREBY GIVEN** that, on the 10:00 a.m. calendar on July 20, 2010, in Courtroom 1668 of the United States Bankruptcy Court for the Central District of California, Los Angeles Division, located at 255 East Temple Street, Los Angeles, California 90012, the Honorable Barry Russell, United States Bankruptcy Judge, will conduct a hearing on the motion (the "Motion"), pursuant to Fed.R.Bankr.P. 2004 and L.B.R. 2004-1, to require the production of documents by and the examination under oath of Bank of America, N.A. ("BofA"), by and through its Branch Manager or other designated custodian of records of Bank of America Newbury Park Branch 0671 ("the "Newbury Branch"), which Motion is hereby made by Ronald L. Durkin, the chapter 11 interim trustee (the "Interim Trustee") of the bankruptcy estate of the alleged debtors (the "Alleged Debtors") in the following five bankruptcy cases (collectively, the "Involuntary Cases"): **(1)** *In re R2D2, LLC*, Bk. Case No. 2:10-bk-19924-BR; **(2)** *In re ThinkFilm, LLC*, Bk. No. 2:10-19912-BR; **(3)** *In re CT-1 Holdings, LLC*, Bk. No. 2:10-bk-19927-BR; **(4)** *In re CapCo Group, LLC*, Bk. No. 2:10-bk-19929-BR; and **(5)** *In re Capitol Films Development, LLC*, Bk. No. 2:10-bk-19938-BR.

**NOTICE UNDER CAL. CODE CIV. PROC. § 1985.3:  NOTICE IS FURTHER GIVEN THAT (1) THIS RULE 2004 MOTION SEEKS PERSONAL RECORDS OF DAVID R. BERGSTEIN ("BERGSTEIN") AND SUSAN H. TREGUB ("TREGUB"); (2) IF BERGSTEIN AND/OR TREGUB OBJECTS TO BofA FURNISHING THE RECORDS SOUGHT, THEN BERGSTEIN AND/OR TREGUB MUST FILE PAPERS WITH THE COURT OR SERVE A WRITTEN OBJECTION; AND (3) AN**

/ / /

1 **ATTORNEY SHOULD BE CONSULTED BY BERGSTEIN AND/OR TREGUB**

2 **ABOUT HIS/HER INTEREST IN PROTECTING HIS/HER RIGHTS OF PRIVACY.**

3 By this Motion, and identical motions in each of the other Involuntary Cases, the

4 Interim Trustee seeks an order which provides that:

5 **A.** BofA, by the Branch Manager or other custodian of records of the

6 Newbury Branch, shall produce for inspection and copying by the Interim Trustee the

7 documents and things described in **Exhibit A** at 10:00 a.m. on July 30, 2010, at the

8 offices of Gumport | Mastan, 550 South Hope Street, Suite 825, Los Angeles,

9 California 90071 (the "G|M Offices").

10 **B.** BofA, by the Branch Manager or other custodian of records of the

11 Newbury Branch, shall appear for and submit to a sworn examination by the Interim

12 Trustee pursuant to Fed.R.Bankr.P. 2004 and L.B.R. 2004-1, at the G|M Offices,

13 before a notary public or some other person authorized to administer oaths, beginning

14 at 10:00 a.m. on July 30, 2010 and continuing during business hours from day to day

15 (not including Saturdays, Sundays, and legal holidays) until completed.

16 **C.** The scope of the examination shall be the production, authenticity,

17 location, maintenance, loss, alteration, and/or destruction of any of the records

18 (including computer files) of the Alleged Debtors' assets, liabilities, and financial

19 affairs listed on **Exhibit A**.

20 **D.** Prior to the commencement of the examination, the Interim Trustee shall

21 file a proof of service of a subpoena pursuant to Fed.R.Bankr.P. 9016 and

22 Fed.R.Civ.P. 45.

23 **NOTICE IS FURTHER GIVEN** that the addresses of BofA include Bank of

24 America, N.A., 333 S. Hope St., 24th Floor, Los Angles, California 90071; the address of the

25 Newbury Branch is Bank of America, Newbury Park Branch 0671, 2345 Borchard Road,

26 Newbury Park, California 91320; and BofA's Vice President and Senior Paralegal is Bill

27 Minnes, P.O. Box 37000, San Francisco, California 94137.  The business address of Bergstein

28 / / /

1    and the Alleged Debtors is 10960 Wilshire Boulevard, Suite 700, Los Angeles, California

2    90024.

3      **NOTICE IS FURTHER GIVEN** that the Motion is made on the grounds that: **(1)** the

4    requested examination and documents will aid the Interim Trustee in ascertaining and

5    protecting the assets and records of the Alleged Debtors, all of whom are affiliated entities

6    that are managed and/or controlled by Bergstein; **(2)** pursuant to L.B.R. 2004-1(a), the Interim

7    Trustee's counsel has conferred with BofA about a proposed Rule 2004 examination; and

8    **(3)** this matter cannot proceed under Fed.R.Bankr.P. 7030 or 9014 because there is no

9    pending adversary proceeding or contested matter in which the Interim Trustee is a party.

10      **NOTICE IS FURTHER GIVEN** that the Motion is being filed with the Court at the

11    address set forth below and is available for public inspection.  Any party-in-interest may

12    obtain a complete copy of the Motion, including the Memorandum of Points and Authorities,

13    Declarations of Ronald L. Durkin, Daniel P. Dehner, Leonard L. Gumport, and Andrew S.

14    Rotter, the Request To Take Judicial Notice, the Supplemental Request To Take Judicial

15    Notice, and the exhibits at that party's own expense from the Court's file or by contacting

16    Travis M. Terry ("Terry") at Gumport | Mastan, 550 South Hope Street, Suite 825, Los

17    Angeles, California 90071; 213-452-4900; or *travis@gumportlaw.com.*

18      **NOTICE IS FURTHER GIVEN** that, by contacting Terry, any party-in-interest may

19    also request a computer-imaged copy of the complete Motion by email provided that the

20    request includes a return email address and states the requesting party's full name and mailing

21    address.

22      **NOTICE IS FURTHER GIVEN** that a motion for a protective order may be filed if

23    grounds therefor exist under Fed.R.Bankr.P. 7026 and Fed.R.Civ.P. 26(c).  Pursuant to the

24    Court's instruction:  **(a)** a formal motion for a protective order, if any, must be filed and

25    served at least 21 days before July 20, 2010, and **(b)** such a motion shall be set for hearing on

26    regular notice on the 10:00 a.m. calendar on July 20, 2010.  Such a motion for a protective

27    order must be filed with the Court and served on the Interim Trustee and the Office of the

28    United States Trustee as follows:

| | | |
|---|---|---|
| 1 | **For Filing with the Court:** | **For Service on the U.S. Trustee**: |
| | Clerk's Office | c/o Russell Clementson, Esq. |
| 2 | United States Bankruptcy Court | Office of the United States Trustee |
| | 255 East Temple Street | 725 South Figueroa Street, Suite 2600 |
| 3 | Los Angeles, California  90012 | Los Angeles, California  90017 |

4

**For Service on the Interim Trustee:**

5    Ronald L. Durkin, Interim Trustee
c/o Andrew S. Rotter, Esq.

6    Gumport | Mastan
550 South Hope Street, Suite 825

7    Los Angeles, California  90071

8        **NOTICE IS FURTHER GIVEN** that failure to timely file and serve the motion

9   for a protective order and to set it for hearing on the 10:00 a.m. calendar on July 20,

10   2010 may be regarded by the Court as consent to granting the Motion and as a waiver of

11   any basis for a protective order.

12

13   Dated: June 15, 2010         Respectfully submitted,

14                         GUMPORT | MASTAN

15

16                   By: *Andrew S. Rotter*

17                        Andrew S. Rotter
Proposed Attorneys for Ronald L. Durkin,
Interim Chapter 11 Trustee

18                        (Employment application is pending.)

19

20

21

22

23

24

25

26

27

28

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004.Motion.Capitol.wpd

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................... 5

II.  SUMMARY ......................................................... 6

III. FACTS ............................................................ 6

    A.   Bergstein, Tutor, R2D2, and CT1 .................................. 6

    B.   Financing CT1's Motion Picture Business ......................... 7

    C.   The Alleged Debtors' Accounts at BofA ........................... 7

    D.   August 2009: Recording of the Bill of Sale from ThinkFilm to Orange Holdings; Transfer of Assets to TFC Library; and LAAC's Liens .......... 8

    E.   November 2, 2009: The Zwirn Complaint ......................... 10

    F.   March 17, 2010: Involuntary Bankruptcy Petitions ................... 10

    G.   March 18, 2010: Declarations Filed by the Petitioning Creditors ......... 10

    H.   March 23, 2010: Bergstein's Declaration ........................... 11

    I.    March 25, 2010: Tutor, Bergstein, and the Alleged Debtors Sue Tregub ... 11

    J.    March 31-April 15, 2010: Orders Appointing Interim Trustee ............ 12

    K.   The April 13, 2010 Meeting with Bergstein at the Suite 700 Office ........ 12

    L.   April 27, 2010: Tutor and Bergstein Cause Alleged Debtors To Sue Zwirn . 12

    M.   The May 3, 2010 Meeting with Bergstein ........................... 13

    N.   Post-May 3, 2010: Bergstein and Biedak Refuse To Provide Voluntary Rule 2004 Exams; Bergstein Again Suspends Access; and Bergstein Fails to Provide the Promised Inventory ................................. 14

    O.   May 6, 2010: Dances With Wolves Productions Alleges Diversion of Film Revenues by a Bergstein Affiliate ................................ 14

    P.   May 13-14, 2010: Tutor's Refusal To Provide Rule 2004 Examination .... 15

    Q.   May 25, 2010: Lack of Cooperation by Bergstein and Barnes ............ 15

    R.   Request to BofA ................................................. 15

IV.  THE REQUESTED FED.R.BANKR.P. 2004 ORDER SHOULD BE GRANTED .................................................... 15

V.   ALL PROCEDURAL REQUIREMENTS ARE SATISFIED ............... 17

i.

## <u>TABLE OF CONTENTS</u> (cont'd)

<u>Page</u>

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**SUPPLEMENTAL DECLARATION OF LEONARD L. GUMPORT** . . . . . . . . . . . . 18

**DECLARATION OF ANDREW S. ROTTER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Dynamic Finance Corp. v. Kipperman (In re North Plaza)*,
   395 B.R. 113 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Buick*,
   174 B.R. 299 (Bankr. D. Colo. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Dinubilo*,
   177 B.R. 932 (E.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Lufkin*,
   255 B.R. 204 (Bankr. E.D. Tenn. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES

Cal. Code Civ. Proc. § 1985.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Bankr.P. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 5, 14-18

Fed.R.Bankr.P. 2004(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed.R.Bankr.P. 2004(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Fed.R.Bankr.P. 7026 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Bankr.P. 7030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

Fed.R.Bankr.P. 9014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

Fed.R.Bankr.P. 9016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Civ.P. 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed.R.Civ.P. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed.R.Evid. 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Local Bankruptcy Rule 2004-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Bankruptcy Rule 2004-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Local Bankruptcy Rule 2004-1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004.Motion.Capitol.wpd

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This memorandum of points and authorities is submitted by the Interim Trustee in support of his motion for a Rule 2004 order requiring testimony of and production of documents and things by Bank of America ("BofA"), a depository for various of the Alleged Debtors and their affiliates.  Sample BofA records, with all but the last four digits of the account numbers redacted, are attached to this motion as **Exhibit B**.

The Interim Trustee is Ronald L. Durkin, who is the chapter 11 interim trustee of alleged debtors (the "Alleged Debtors") in the following five bankruptcy cases (collectively, the "Involuntary Cases"):  **(1)** *In re R2D2, LLC*, Bk. Case No. 2:10-bk-19924-BR; **(2)** *In re ThinkFilm, LLC*, Bk. No. 2:10-19912-BR; **(3)** *In re CT-1 Holdings, LLC*, Bk. No. 2:10-bk-19927-BR; **(4)** *In re CapCo Group, LLC*, Bk. No. 2:10-bk-19929-BR; and **(5)** *In re Capitol Films Development, LLC*, Bk. No. 2:10-bk-19938-BR.

The Alleged Debtors in the Involuntary Cases are five affiliated companies that were directly or indirectly co-owned by David R. Bergstein ("Bergstein") and Ronald N. Tutor ("Tutor") from November 2002 until at least January 2009 and thereafter purportedly directly or indirectly wholly-owned by Bergstein.  The names of the Alleged Debtors are:  **(1)** R2D2 LLC ("R2D2"), **(2)** CT1 Holdings LLC ("CT1"), **(3)** Capco Group LLC ("Capco"), **(4)** Capitol Films Development LLC ("CFD") and **(5)** ThinkFilm LLC ("ThinkFilm").

This motion is based on declarations of Ronald L. Durkin, the Interim Trustee; Daniel P. Dehner of Durkin Forensic Incorporated, the Interim Trustee's accounting firm (employment application pending); Leonard L. Gumport of the Gumport | Mastan ("G|M"), the Interim Trustee's counsel (employment application pending); and Andrew S. Rotter of G|M.  This motion is also based on the previously filed Request To Take Judicial Notice ("RJN") and the concurrently filed Supplemental Request To Take Judicial Notice (the "Supp. RJN").

/ / /

/ / /

5.

## II.   SUMMARY

The Interim Trustee cannot safeguard the assets of the Alleged Debtors' bankruptcy estates unless he knows what those assets are. BofA was a depository for various of the Alleged Debtors and their affiliates. Sample BofA records, redacted to show only the last four digits of the account numbers, reflect that the Interim Trustee has good cause to believe that the Newbury Park Branch No. 0671 of BofA (the "Newbury Branch") has substantial financial records concerning the sources and uses of the Alleged Debtors' funds. *See* Ex. B. As a regulated financial institution, BofA will not turn over account records absent a court order, which the Interim Trustee now seeks.

## III.   FACTS

### A.   Bergstein, Tutor, R2D2, and CT1

Beginning in November 2002, Bergstein and Tutor were each 50% owners of R2D2, LLC, a California limited liability company. RJN, ¶ 8 and Ex. 6 (R2D2 Operating Agreement, pp. 1-2). R2D2 directly or indirectly owns CT1, Capco, CFD, and ThinkFilm; and Bergstein is a manager of R2D2, CT1, Capco Group, and CFD. RJN, ¶ 7 and Ex. 5 (3/23/10 Bergstein Decl., ¶ 1); Durkin Decl., ¶ 6; Gumport Decl., ¶ 4.

According to Bergstein, the Alleged Debtors were part of an enterprise controlled by Bergstein that "handles" $500,000,000 in funds, much of them belonging to third parties. RJN, ¶ 7 and Ex. 5 (3/23/10 Bergstein Decl., ¶ 2). As recently as April 2010, Bergstein and Tutor described CT1 and its subsidiaries as follows:

> CT1 and its subsidiaries have financed, produced, and/or distributed over 1,300 films. Among the wide range and genres of motion pictures in CT1's library are the critically-acclaimed Robert Altman films *Gosford Park, Prairie Home Companion*, and *The Company; Adaptation*, starring Meryl Streep, Nicholas Cage and Chris Cooper, which won Golden Globe and Academy Awards; Jennifer Lopez' *The Wedding Planner* and *Bordertown*; action films such as *Point Break* and *Terminator 3*; and thrillers such as *Lucky No. Slevin* and *Spartan*.

RJN, ¶ 11 and Ex. 9 (Bergstein/Tutor Comp., ¶ 12).

According to Bergstein, CT1 currently conducts its film distribution business "primarily" through three entities: **(1)** ThinkFilm, **(2)** a subsidiary of CFD named Capitol

6.

1  Films Ltd. UK, and **(3)** Pangea Media Group LLC ("Pangea"). RJN, Ex. 5 (3/23/10 Bergstein

2  Decl., ¶ 8). Bergstein also stated that the current payroll of R2D2, CT1, Capco, and CFD is

3  paid through a company named Managed Media Services, which "serves the centralized

4  'G&A' function." *Id.*, ¶ 4. According to Bergstein, Pangea "was formed in late 2008" and

5  "took over the sales function as to all of the CT1 libraries." *Id.*, ¶ 13.

6  **B.    Financing CT1's Motion Picture Business**

7  According to Bergstein and Tutor, the motion picture business of CT1 requires third-

8  party financing. In a Complaint filed by Bergstein, Tutor, CT1, and others, they alleged:

9  > In order to make, acquire, and distribute motion pictures, CT1 has
   > required and obtained financing from third party lenders. The
10 > procurement of third party financing is standard practice in the motion
   > picture industry and is the way both independent film companies and
11 > large studios obtain the necessary capital for their production an
   > operations. CT1 (and motion picture companies in general) must
12 > continually obtain financing in order to operate. . . .

13 RJN, Ex. 9, p. 00108 (Bergstein/Tutor Comp., ¶ 13). Beginning no later than December

14 2005, D.B. Zwirn Special Opportunities Fund, L.P. and related entities (collectively, "Zwirn")

15 loaned tens of millions of dollars to or guaranteed by one or more of the Alleged Debtors.

16 RJN, Ex. 8 (Zwirn Comp.); RJN, Ex. 9 (Bergstein/Tutor Comp., ¶¶ 15-18).

17 **C.    The Alleged Debtors' Accounts at BofA**

18 The Alleged Debtors and various of their affiliates utilized accounts at the Newbury

19 Park Branch of BofA. As reflected by Exhibit B, such accounts included: **(1)** Capco's

20 accounts no. x1728 and x1741; **(2)** CFD's account no. x0609; **(3)** CT1's account no. x2109;

21 **(4)** PMS's (Production Management Service's) account no. xx1436; **(5)** R2D2's accounts no.

22 x9174, x9179, x2105, x2106; **(6)** ThinkFilm BofA accounts no. x1307, x8528; and

23 **(7)** Susan H. Tregub's ("Tregub") accounts no. x1360, x1524 and x2086.[1] In addition, from

24 its account no. x1741, Capco repeatedly made transfers to PMS' account no. x1436, including

25 transfers of more than $500,000 on a single day, May 25, 2007. Ex. B.

26 / / /

27

28      [1]    Tregub is a former attorney for the alleged Debtors. RJN, Ex. 5 (3/23/10
Bergstein Decl., ¶ 25).

1        In addition, TFC Library LLC ("TFC Library") utilizes the same Suite 700 Office as

2    Bergstein, Pangea and the Alleged Debtors, and TFC Library has BofA account no. x0804 at

3    the BofA Wilshire-Westwood Branch.  Bergstein's email address refers to an entity named

4    "Graybox," and R2D2 transferred funds from its Comerica account no. x2169 to Graybox's

5    BofA account no. 2107.  *See* Ex. B.

6        Bergstein has not turned over a complete set of financial records for the Alleged

7    Debtors.  *See* Durkin Decl., ¶¶ 8-11, Dehner Decl., ¶¶ 5-11; Gumport Decl., ¶ 9.  Moreover,

8    Bergstein admittedly has not filed personal income tax returns for the past three years.

9    Nevertheless, the bank account records of the Alleged Debtors reflect significant transfers of

10    funds from Alleged Debtor CT1 to an American Express card in the name of "Sara

11    Bergstein."  These transfers include:  **(a)** $20,000 on October 22, 2008, **(b)** $36,000 on

12    October 24, 2008, **(c)** $70,000 on February 13, 2009, and **(d)** $130,000 on March 3, 2009.

13    *See* Ex. B.

14       **D.**    **August 2009:  Recording of the Bill of Sale from ThinkFilm to Orange**

15           **Holdings; Transfer of Assets to TFC Library; and LAAC's Liens**

16        As described above, on April 27, 2010, Tutor and Bergstein purported to describe films

17    "in" CT1's library.  RJN, Ex. 9 (Bergstein/Tutor Comp., ¶ 12).  According to Bergstein,

18    however, substantially all of the Alleged Debtors' assets were transferred prior to 2010 to an

19    entity owned or controlled by Tutor and/or Bergstein.  The name of the transferee appears to

20    be TFC Library; and Library Asset Acquisition Company, Ltd. ("LAAC") purportedly

21    acquired a lien against these assets.  RJN, Ex. 5 (3/23/10 Bergstein Decl., ¶¶ 7, 24); Durkin

22    Decl., ¶ 6; Gumport Decl., ¶ 4.

23        A pre-bankruptcy Bill of Sale recorded in August 2009 at the United States Copyright

24    Office reflects that ThinkFilm (one of the Alleged Debtors) and other entities managed by

25    Bergstein purported to transfer copyrights to hundreds to films to Orange Holdings.  RJN,

26    ¶ 13 and Ex. 11 (Bill of Sale).  The Bill of Sale recites that Tregub was the manager of

27    Orange Holdings.  *Id.*, p. 000165.

28    / / /

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004.Motion.Capitol.wpd

1        Although the recorded Bill of Sale identifies Orange Holdings as the purchaser,

2   Bergstein testified that the transferee of ThinkFilm's film licenses was TFC Library. RJN,

3   Ex. 5 (3/23/10 Bergstein Decl., ¶ 7).  Therefore, it appears that TFC Library is the successor

4   to or the same as Orange Holdings.  In his Declaration, Bergstein did not explain the reason

5   for the name change. *See id.*

6        Nor did Bergstein explain the disparity between the "as of" date of the Bill of Sale and

7   the date on which it was recorded in the United States Copyright Office.  The Bill of Sale is

8   dated "as of" October 24, 2008 (RJN, Ex. 11, p. 000163); but it was not recorded until

9   August 4, 2009, almost ten months later (*id.*, p. 000161).  A substantial discrepancy between

10  the "as of" date of a transaction and its actual recording raise questions about the accuracy of

11  the "as of" date.

12       According to Bergstein, TFC Library acquired the rights to ThinkFilm's assets by

13  agreeing to pay a loan of approximately $24.5 million from Zwirn.  RJN, Ex. 5 (3/23/10

14  Bergstein Decl., ¶ 7).  Bergstein's declaration does not reveal how much value has been

15  extracted from those assets since their transfer to TFC Library. *See id.*  Bergstein also

16  testified that LAAC now has acquired Zwirn's liens against "film collateral held by TFC

17  Library" by paying $45 million to Zwirn during March-May 2009. *Id.*, ¶ 24.  But Bergstein's

18  declaration does not explain why Zwirn is currently suing Bergstein and Tutor for alleged

19  non-performance of guarantees of loans made by Zwirn. *Compare* RJN, Ex. 5 (3/23/10

20  Bergstein Decl., ¶ 7) *with*  RJN, Ex. 8 (Zwirn Comp.).

21       Elsewhere, Bergstein and Tutor are suing Zwirn for usury, among other things. RJN,

22  Ex. 9 (Bergstein/Tutor Comp.).  Bergstein's declaration also does not explain or discuss

23  whether the assets transferred by ThinkFilm to Orange Holdings/TFC Library for repayment

24  and/or purchase of a $24.5 million (or $45 million) loan from Zwirn were also tainted by the

25  usury of which Bergstein and Tutor accuse Zwirn.

26       Bergstein stated that Tregub was his attorney.  RJN, Ex. 5 (Bergstein Decl., ¶ 25).

27  Tutor has alleged that Tregub was also Tutor's counsel, as reflected by the "Notice of

28  Removal" filed by Tregub in Adv. No. 2:10-ap-01651-BR on April 5, 2010.  Supp. RJN, ¶ 4

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004,Motion,Capitol.wpd

1  and Ex. 26 (Ex. A thereto, ¶¶ 28-29).  Millions of dollars were transferred between accounts

2  of the Alleged Debtors' and Tregub's accounts (including her client trust account); however,

3  the records produced by the Alleged Debtors do not explain (and may not identify) all of these

4  transactions.  Dehner Decl., ¶ 12 and Ex. 18 (schedule of transfers).

5     **E.     November 2, 2009:  The Zwirn Complaint**

6        On November 2, 2009, shortly after the Bill of Sale was recorded, Zwirn and other

7  lenders filed a Complaint against Bergstein and Tutor.  RJN, Ex. 8 (Zwirn Comp.).  Zwirn's

8  Complaint alleged that Bergstein and Tutor had failed to perform their obligations as

9  guarantors of tens of millions of dollars of loans made by Zwirn to finance the production of

10  motion pictures and the acquisition of motion picture rights by various companies, including a

11  $51 million loan to CT1.  RJN, Ex. 8 (Zwirn Comp., ¶¶ 1-5).

12        According to Zwirn, the events of default that occurred under the $51 million CT1 loan

13  included, among other things, CT1's failure to repay the principal amount of the loan on

14  May 29, 2009 and its failure to deliver Tutor's financial statements confirming that he had a

15  "Minimum Net Worth of not less than $800,000,000 for the quarters ending March 31, 2008

16  and thereafter."  RJN, Ex. 8, (Zwirn Comp., ¶ 24).

17        Zwirn further alleges that it delivered demands to Bergstein and Tutor for repayments

18  of not less than $55 million on the CT1 loan in September 2009.  RJN, Ex. 8, p. 89 (Zwirn

19  Comp., ¶¶ 27-28).

20     **F.     March 17, 2010:  Involuntary Bankruptcy Petitions**

21        On March 17, 2010, creditors filed involuntary bankruptcy petitions under chapter 11

22  against each of the Alleged Debtors.  RJN, ¶ 1.

23     **G.     March 18, 2010:  Declarations Filed by the Petitioning Creditors**

24        On March 18, 2010, the petitioning creditors filed emergency motions for the

25  appointment of an interim trustee in each of the Involuntary Cases.  RJN, ¶ 2.  The

26  declarations filed in support of those emergency motions included declarations from Hans

27  Turner, Roger Gertz, Jeffrey Gaul and Henry Lan.  RJN, ¶¶ 3-6 and Exs. 1-4.  Certain of these

28  declarations included allegations that:  **(1)** the Alleged Debtors had inadequate accounting

10.

1    records; and **(2)** Bergstein relied on Frymi Biedak ("Biedak") to perform "basic bookkeeping

2    functions." *See e.g.*, RJN, ¶¶ 3-4 and Ex. 1 (3/18/10 Turner Decl., ¶ 3), Ex. 2 (3/18/10 Gertz

3    Decl., ¶ 3).

4    **H.    March 23, 2010:  Bergstein's Declaration**

5    On March 23, 2010, Bergstein filed a declaration in opposition to the emergency

6    motions of the petitioning creditors.  Bergstein testified that:  **(1)** he was "an" owner and

7    manager of R2D2; **(2)** he was a manager of CT1, Capco, and CFD; and **(3)** the Alleged

8    Debtors were "operating companies and holding companies" that were part of a "large group

9    of affiliates" that "handles funds in the range of $500,000,000 annually, much of it owed to or

10   claimed by numerous third persons."  RJN, Ex. 5 (3/23/10 Bergstein Decl., ¶ 2).

11   Bergstein also testified that the Alleged Debtors (other than ThinkFilm) were generally

12   paying their debts as they fell due.  RJN, Ex. 5 (3/23/10 Bergstein Decl., ¶ 4).

13   Limited bank records subsequently produced to the Interim Trustee by the Alleged

14   Debtors reflect that, at the time Bergstein filed this declaration, the Alleged Debtors may have

15   had less than $5,000 in their bank accounts.  Supp. Dehner Decl., ¶ 3 and Ex. 25.  The

16   combined account balances for the Alleged Debtors during December 2009-May 2010 appear

17   to have been as follows:  **(1)** $13,031.72 on December 31, 2009, **(2)** $2,965.91 on January 31,

18   2010, **(3)** $3,354.55 on February 28, 2010, **(4)** $4,607.02 on March 31, 2010, and

19   **(5)** $4,391.12 on May 5, 2010.  *Id.*

20   **I.    March 25, 2010: Tutor, Bergstein, and the Alleged Debtors Sue Tregub**

21   On March 25, 2010, Tutor, Bergstein, the Alleged Debtors. and other of their affiliates

22   filed a Complaint against Tregub in the Los Angeles Superior Court.  Subsequently, Tregub

23   removed that Complaint to this Court by filing a "Notice of Removal" in Adv. No. 2:10-ap-

24   01651-BR.  Supp. RJN, Ex. 26 (Adversary Proceeding Cover Sheet and attached documents).

25   In the Complaint, Tutor, Bergstein, and the Alleged Debtors (among others) alleged that

26   Tregub had breached her fiduciary obligations to keep unspecified information secret.  *Id.*

27   (attached Comp.).  Millions of dollars have been transferred between Tregub's client trust

28   account and accounts of the Alleged Debtors.  Dehner Decl., Ex. 18 (schedule of transfers).

**J.     March 31-April 15, 2010: Orders Appointing Interim Trustee**

On March 31, 2010, in each Involuntary Case, the Court ordered the appointment of an interim trustee. RJN, ¶ 2. On or about April 9, 2010, in each of the Involuntary Cases, the Office of the United States Trustee (the "OUST") filed applications for the Court to approve the appointment of Mr. Durkin as the chapter 11 interim trustee of each of the Alleged Debtors' bankruptcy estates. Durkin Decl., ¶ 3. Those applications were granted by orders entered on April 15, 2010. *Id.*; RJN, ¶ 2.

**K.     The April 13, 2010 Meeting with Bergstein at the Suite 700 Office**

On April 13, 2010, two days before the orders approving the OUST's applications to appoint Mr. Durkin as the Interim Trustee were entered, Mr. Durkin met with Bergstein at Bergsten's office at 10960 Wilshire Boulevard, Suite 700, Los Angeles, California (the "Suite 700 Office"). Durkin Decl., ¶ 5; Gumport Decl., ¶ 3.

No longer did Bergstein portray any of the Alleged Debtors as "operating companies" or as part of an affiliated group handling $500,000,000 in funds. Instead, Bergstein presented a different scenario. At the April 13 meeting, Bergstein portrayed the Alleged Debtors as essentially defunct, having no employees, no payroll, no operations, and no disclosed assets. According to Bergstein, the Alleged Debtors had transferred their assets to one or more non-debtor affiliates, subject to more than $40 million in liens; and collectively, they had approximately $5,000 in the bank. Durkin Decl., ¶ 6; Gumport Decl., ¶ 4.

During the April 13 meeting, Bergstein gave Mr. Durkin a tour of the Suite 700 Office. There were at least ten people in the office, but Bergstein stated that they were not employed by any of the Alleged Debtors. However, one of those persons stated that, in fact, he believed that he was employed by one of the Alleged Debtors. Durkin Decl., ¶ 7.

Bergstein also stated that the Suite 700 Office was not leased by any of the Alleged Debtors, but was instead leased by a company named Pangea. Durkin Decl., ¶ 7.

**L.     April 27, 2010: Tutor and Bergstein Cause Alleged Debtors To Sue Zwirn**

On April 27, 2010, Bergstein and Tutor filed a Complaint against Zwirn. RJN, Ex. 9 (Bergstein/Tutor Comp.). In that Complaint, Bergstein and Tutor alleged, among other things,

1  that Zwirn's loans to various entities (which were guaranteed by Bergstein and Tutor) were

2  usurious, illegal, and unenforceable. *Id.*, ¶¶ 62, 66.

3      Tutor and Bergstein included as co-plaintiffs in that Complaint four of the Alleged

4  Debtors (R2D2, CT1. Capco, and ThinkFilm). RJN, Ex. 9, pp. 1-4. Bergstein did not ask the

5  permission of the Interim Trustee to file post-appointment lawsuits on behalf of the Alleged

6  Debtors. Durkin Decl., ¶ 12.

7      **M.    The May 3, 2010 Meeting with Bergstein**

8      On May 3, 2010, the Interim Trustee and his counsel met with Bergstein. Durkin

9  Decl., ¶ 13; Gumport Decl., ¶ 7. At this meeting, Bergstein stated:

10     **(a)**    Bergstein did not have tax returns for any of the Alleged Debtors,

11  believed that they had not filed returns during the past two years, and thought that

12  maybe some returns had been filed.

13     **(b)**    Bergstein had not filed personal tax returns for the past three years, and

14  was now unable to get an extension of time to file his tax returns.

15     **(c)**    The Interim Trustee would not be allowed by Bergstein to image the

16  computers of Bergstein and Biedak.

17     **(d)**    Bergstein would provide a written inventory of the Alleged Debtors'

18  assets, including their records and possible lawsuits in which they were involved.

19     **(e)**    Bergstein would provide records reflecting that substantially all of the

20  assets of the Alleged Debtors had been transferred to a non-debtor affiliate

21  substantially before the filing of the Involuntary Cases.

22     **(f)**    The non-debtor affiliate that had title to the transferred assets of the

23  Alleged Debtors' assets was directly or indirectly owned by Bergstein and Tutor; and

24  Bergstein's interest was pledged in favor of Tutor.

25  Durkin Decl., ¶ 13; Gumport Decl., ¶ 7.

26  / / /

27  / / /

28  / / /

13.

**N.    Post-May 3, 2010:  Bergstein and Biedak Refuse To Provide Voluntary Rule 2004 Exams; Bergstein Again Suspends Access; and Bergstein Fails to Provide the Promised Inventory**

After the May 3 meeting, and through the filing of a Rule 2004 motion on May 25, 2010, Bergstein still had not provided a written inventory of the records and assets of the Alleged Debtors.  Dehner Decl., ¶ 9; Durkin Decl., ¶¶ 14-15.

After the May 3 meeting, Bergstein purported to offer cooperation, including access to his and Biedak's computers, but Bergstein always conditioned access to those computers on the Interim Trustee's making commitments concerning how he would administer assets and records that Bergstein had refused to disclose or turn over.  *See* Dehner Decl., ¶¶ 7-9; Durkin Decl., ¶ 16; Gumport Decl., ¶ 8 and Ex. 19 (email thread).

Despite many emails from Bergstein proposing conditional cooperation, the end result was and is that Bergstein has withheld any imaging of the Bergstein and Biedak computers.  Bergstein sought to withhold information while demanding commitments from the Interim Trustee about the administration of the estates.  *See* Dehner Decl., ¶¶ 7-9; Durkin Decl., ¶ 16; Gumport Decl., ¶ 8 and Ex. 19.

Bergstein took the same approach with respect to providing sworn testimony to the Interim Trustee.  Bergstein and his counsel insisted on bargaining about the timing and conditions under which Bergstein and Biedak would provide Rule 2004 examinations.  If the Interim Trustee made commitments acceptable to Bergstein concerning the administration of the Alleged Debtors' estates, including with respect to undisclosed assets, then Bergstein would provide cooperation; otherwise, he would not do so.  The end result was that Bergstein and Biedak have not made and did not make themselves available for Rule 2004 examinations on a voluntary basis.  *See* Gumport Decl., ¶ 8 and Ex. 19 (email thread).

**O.    May 6, 2010:  Dances With Wolves Productions Alleges Diversion of Film Revenues by a Bergstein Affiliate**

On May 6, 2010, Dances With Wolves Productions Inc. filed a Complaint against a Bergstein affiliate named R Media Acquisitions, LLC.  In that Complaint, the plaintiff alleged

14.

1  that, under Bergstein's management, film revenues from the motion picture *Dances With*

2  *Wolves* had been diverted during a state court receivership. RJN, ¶ 12 and Ex. 11 (Dances

3  With Wolves Comp.)

4       **P.**    **May 13-14, 2010: Tutor's Refusal To Provide Rule 2004 Examination**

5       R2D2 is one of the Alleged Debtors. Until at least January 2009, R2D2 was co-owned

6  by Bergstein and Ronald RJN, Ex. 6 (R2D2 Operating Agreement); Gumport Decl., Ex. 21

7  (Membership Interest Purchase Agreement). During May 2010, while R2D2's co-owner,

8  Bergstein, withheld records and failed to provide a voluntary Rule 2004 examination, Tutor

9  also refused to provide a voluntary Rule 2004 examination. Gumport Decl., ¶ 9 and Ex. 20

10  (email thread).

11       **Q.**    **May 25, 2010: Lack of Cooperation by Bergstein and Barnes**

12       Through May 25, 2010, Bergstein continued to refuse to produce himself for an

13  immediate Rule 2004 examination and denied the Interim Trustee access to files of the

14  Alleged Debtors on the office computers of Bergstein and his bookkeeper, Biedak.

15       Similarly, Michael Barnes, Esq., an attorney for one or more of the Alleged Debtors,

16  failed to turn over any client files of the Alleged Debtors, despite being requested to do so.

17  Gumport Decl., ¶ 11 and Ex. 23 (5/11/2010 email).

18       **R.**    **Request to BofA**

19       On June 10, 2010, the Interim Trustee notified BofA that he intended to apply for Rule

20  2004 examinations. Supp. Gumport Decl., ¶ 2. It is common knowledge that a bank will not

21  voluntarily provide any financial information to third parties absent a subpoena or other court

22  order. *See id.*

23  **IV.**    **THE REQUESTED FED.R.BANKR.P. 2004 ORDER SHOULD BE GRANTED**

24       There is good cause to grant the requested Rule 2004 order so that the Interim Trustee

25  can ascertain and safeguard the Alleged Debtors' assets and the records of those assets.

26       Fed.R.Bankr.P. 2004(a) provides: "On motion of any party in interest, the court may

27  order the examination of any entity." Fed.R.Bankr.P. 2004(b) provides that a Rule 2004

28  examination "may relate only to the acts, conduct, or property or to the liabilities and financial

1    condition of the debtor, or to any matter which may affect the administration of the debtor's

2    estate. . . ." "[I]t is well-settled that Rule 2004 discovery enjoys a broad scope, regardless of

3    any background state law issues." *Dynamic Finance Corp. v. Kipperman (In re North Plaza)*,

4    395 B.R. 113, 122 (S.D. Cal. 2008). "The scope of a Rule 2004 examination is extremely

5    broad and has often been likened to a lawful 'fishing expedition.'" *In re Lufkin*, 255 B.R.

6    204, 209 (Bankr. E.D. Tenn. 2000).

7        "The purpose of a Rule 2004 examination is to determine the condition, extent, and

8    location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re*

9    *Lufkin*, 255 B.R. at 208. "Rule 2004 may be used to search for assets which have been

10    intentionally or unintentionally concealed." *Id.* (citation omitted); *see In re Dinubilo*, 177

11    B.R. 932, 940 (E.D. Cal. 1993) ("The purpose is to allow inquiry in the debtor's acts, conduct

12    or financial affairs so as to discover the existence or location of assets of the estate").

13        The Interim Trustee cannot safeguard the Alleged Debtors' assets without knowing

14    what those assets are. Questions meriting investigation are raised by the contrast between

15    Bergstein's March 23, 2010 declaration to the Court in the Involuntary Cases and his April 13

16    and May 3 unsworn oral statements to the Interim Trustee.

17        **(1)**    On March 23, 2010, Bergstein filed a declaration purporting to describe

18        the Alleged Debtors as "operating companies and holding companies" that are part of

19        an "affiliated enterprise" of "a large group of affiliates" that "handles funds in the

20        range of $500,000,000 annually, much of it owed to or claimed by numerous third

21        persons." Ex. 5 (3/23/10 Bergstein Decl., ¶¶ 2-3).

22        **(2)**    However, after the Court appointed the Interim Trustee, Bergstein told a

23        different story. According to Bergstein's unsworn oral interviews on April 13 and

24        May 3, 2010, the Alleged Debtors currently have no payroll or employees and

25        cumulatively have approximately $5,000 or less in the bank.

26    Durkin Decl., ¶ 6; Gumport Decl., ¶ 4.

27        The Interim Trustee seeks information within the scope of Fed.R.Bankr.P. 2004(b).

28    Specifically, the Interim Trustee seeks bank records showing the sources and uses of funds

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004.Motion.Capitol.wpd

1    that flowed into and out of the accounts of the Alleged Debtors and their affiliates at BofA.

2    The bank records showing the sources and uses of those funds of the Alleged Debtors are

3    critical financial information that the Interim Trustee is entitled to know.

4    **V.    ALL PROCEDURAL REQUIREMENTS ARE SATISFIED**

5         The Interim Trustee conferred with Bank of America.  Supp. Gumport Decl., ¶ 2.

6    BofA's addresses include Bank of America, N.A., 333 S. Hope St., 24th Floor, Los Angles,

7    California 90071; the address of the Newbury Branch is Bank of America, Newbury Park

8    Branch 0671, 2345 Borchard Road, Newbury Park, California 91320; and BofA's Vice

9    President and Senior Paralegal is Bill Minnes, P.O. Box 37000, San Francisco, California

10   94137.

11        The Interim Trustee's examination of BofA and Comerica cannot proceed under

12   Fed.R.Bankr.P. 7030 or 9014 because the Interim Trustee is not a party to any pending

13   adversary proceeding or contested matter.  Gumport Decl., ¶ 12.  *See In re Buick*, 174 B.R.

14   299, 305 (Bankr. D. Colo. 1994) ("Thus, even after the trustee has commenced adversary

15   proceeding(s), the trustee may conduct Rule 2004 examinations of entities which are not

16   parties to or are not affected by the pending adversary proceeding(s)").

17        As required by L.B.R. 2004-1(c), a copy of this motion and its supporting papers were

18   duly served as reflected by proofs of service to this motion and the concurrently filed notice of

19   filing of this motion.  *See* Rotter Decl., ¶ 2 and Ex. 26.

20   **VI.    CONCLUSION**

21        For the reasons set forth above, the Court should grant the relief specified in the Notice

22   of the Motion.

23   Dated:  June 15, 2010                     Respectfully submitted,

24                                             GUMPORT | MASTAN

25

26                                             By: _Andrew J. Rotter_____
                                                   Andrew S. Rotter
27                                                 Proposed Attorneys Ronald L. Durkin,
                                                   Interim Chapter 11 Trustee
28                                                 (Employment application is pending.)

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004.Motion.Capitol.wpd

## SUPPLEMENTAL DECLARATION OF LEONARD L. GUMPORT

I, Leonard L. Gumport, state:

1.      I am a partner in the law firm of Gumport | Mastan, whose applications to serve as counsel to Ronald L. Durkin ("Mr. Durkin" or the "Interim Trustee") in his capacity as the Interim Trustee are pending. Mr. Durkin is the Interim Trustee in the following five bankruptcy cases (collectively, the "Involuntary Cases"): **(a)** *In re ThinkFilm, LLC*, Bk. No. 2:10-bk-19912-BR, **(b)** *In re R2D2 LLC*, Bk. No. 2:10-bk-19924-BR; **(c)** *In re CT-1 Holdings, LLC*, Bk. No. 2:10-bk-19927-BR; **(d)** *In re CapCo Group, LLC*, Bk. No. 2:10-bk-19929-BR; and **(e)** *In re Capitol Films Development, LLC*, Bk. No. 2:10-bk-19938-BR.  At Mr. Durkin's request, I began working on his behalf on April 9, 2010.  I have personal knowledge of the facts stated in this declaration; and if called as a witness, I could and would competently testify thereto under oath.

2.      On June 10, 2010, I had a telephone conference with Bill Minnes, who identified himself as a Vice President & Senior Paralegal of Bank of America, N.A. ("BofA") and the person at BofA who handles subpoena inquiries.  I told Mr. Minnes that the Interim Trustee intended to examine BofA and obtain documents from it pursuant to Fed.R.Bankr.P. 2004.  Mr. Minnes did not state that BofA opposed a Rule 2004 examination and document production.  I also told Mr. Minnes that it is my understanding that banks will not voluntarily provide any financial information to third parties without a subpoena or other court order.  Mr. Minnes did not disagree with that statement.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 15, 2010, at Los Angeles, California.

_____
Leonard L. Gumport

## DECLARATION OF ANDREW S. ROTTER

I, Andrew S. Rotter, state:

1.      I am a partner in the law firm of Gumport | Mastan, whose applications to serve as counsel to Ronald L. Durkin ("Mr. Durkin" or the "Interim Trustee") in his capacity as the Interim Trustee are pending.  Mr. Durkin is the Interim Trustee in the following five bankruptcy cases (collectively, the "Involuntary Cases"):  **(1)** *In re R2D2, LLC*, Bk. Case No. 2:10-bk-19924-BR; **(2)** *In re ThinkFilm, LLC*, Bk. No. 2:10-19912-BR; **(3)** *In re CT-1 Holdings, LLC*, Bk. No. 2:10-bk-19927-BR; **(4)** *In re CapCo Group, LLC*, Bk. No. 2:10-bk-19929-BR; and **(5)** *In re Capitol Films Development, LLC*, Bk. No. 2:10-bk-19938-BR.  At Mr. Durkin's, I began working on the Involuntary Cases on or about April 9, 2010.  I have personal knowledge of the facts stated in this declaration; and if called as a witness. I could and would competently testify thereto under oath.

2.      In addition to service on those persons and entities identified in the attached Proof of Service, at my instruction, my office is serving a Notice of the filing of the foregoing motion in the form of **Exhibit 27** on those persons and entities listed in the Proof of Service thereto.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 15, 2010 at Los Angeles, California.

Andrew S. Rotter

F:\CLIENTS\Thinkfilm\Pleadings\BofA Rule 2004.Motion.Capitol.wpd